# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LOUIS J. DECOSMO

     Plaintiff,

  v.

NEW YORK PRESBYTERIAN
HOSPITAL

     Defendant.

No. 22-cv-7509

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NEW YORK PRESBYTERIAN HOSPITAL'S <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

Motion Date: May 1, 2023

Alison R. Benedon
Liza M. Velazquez (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
abenedon@paulweiss.com
lvelazquez@paulweiss.com

*Attorneys for The New York
Presbyterian Hospital s/h/a New York
Presbyterian Hospital*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................... i

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ........................................................................................3

    A.    New York Presbyterian Hospital ................................................3

    B.    The COVID-19 Pandemic and NYPH's Vaccination Program ............4

    C.    The New York Department of Health's Vaccination Mandate ...........6

    D.    Plaintiff's Employment at the Hospital .................................................8

    E.    Plaintiff's Refusal to Comply with the State Law Vaccination Requirement ...............................................................................9

    F.    Procedural History ...............................................................................10

ARGUMENT ...........................................................................................................10

I.    The Court Lacks Personal Jurisdiction Over Defendant ..............................12

    A.    No General Jurisdiction Exists Over NYPH .......................................12

    B.    No Specific Jurisdiction Exists Over NYPH ......................................14

II.    Plaintiff Fails to State a Religious Discrimination Claim Under Title VII .................................................................................................................17

    A.    The Complaint Fails to Plausibly Plead That Plaintiff's Stated Beliefs Conflict with an Employment Requirement. ..........................18

    B.    The Complaint Fails to Plausibly Plead That Any Adverse Action was "Because of" Plaintiff's Religious Beliefs .......................19

    C.    As a Matter of Law, the Hospital was Not Required to Provide Plaintiff with a Religious Accommodation from the Vaccination Requirement. ...............................................................21

    D.    The Complaint Does Not Plausibly Allege That the Hospital Failed to Engage in the Interactive Process under Title VII. .............25

III.    Plaintiff Fails to State a Retaliation Claim Under Title VII .........................28

IV.    Plaintiff Fails to State a Defamation Claim ..................................................30

V.    Plaintiff Fails to State a Declaratory Judgment Act Claim ..........................33

CONCLUSION ........................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.G.* v. *Chester Upland School Dist.*,
    655 F. App'x 125 (3d Cir. 2016) ........................................................................33

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009).........................................................................................11

*Avenatti* v. *Fox News Network, LLC*,
    2021 WL 3603035 (D. Del. Aug. 13, 2021).....................................................32

*In re AZEK Bldg. Prods., Inc. Litig.*,
    82 F. Supp. 3d 608 (D.N.J. 2015)...................................................................33

*Barrington* v. *United Airlines, Inc.*,
    566 F. Supp. 3d 1102, 1110 (D. Colo. 2021) ..................................................26

*Bey* v. *City of New York*,
    999 F.3d 157 (2d Cir. 2021) .............................................................................23

*Bhatia* v. *Chevron U.S.A., Inc.*,
    734 F.2d 1382 (9th Cir. 1984) .........................................................................23

*Billings* v. *N.Y.S. Dep't of Corr. & Cmty. Supervision*,
    2021 WL 4150925 (S.D.N.Y. Sept. 10, 2021) .................................................20

*Blakney* v. *City of Philadelphia*,
    559 F. App'x 183 (3d Cir. 2014) ................................................................28, 30

*Bright* v. *LabCorp*,
    2013 WL 1163489 (D.N.J. Mar. 19, 2013) ......................................................33

*Burger King Corp.* v. *Rudzewicz*,
    471 U.S. 462 (1985).....................................................................................14, 16

*Callahan* v. *Wisdom*,
    2020 WL 2061882 (D. Conn. Apr. 29, 2020)...................................................16

*Castoria* v. *Berlin Int'l Colorado, L.L.C.*,
    2018 WL 3000173 (D.N.J. June 14, 2018).......................................................15

*In re Cognizant Tech. Sols. Corp. Derivative Litig.*,
2022 WL 4483595 (D.N.J. Sept. 27, 2022) .......................................................9

*Corigliano* v. *Classic Motor, Inc.*,
611 F. App'x 77 (3d Cir. 2015) ..........................................................14

*Daimler AG* v. *Bauman*,
571 U.S. 117 (2014) ...........................................................12, 13

*Dodd* v. *SEPTA*,
2008 WL 2902618 (E.D. Pa. July 23, 2008) ..........................................25

*Does 1-2* v. *Hochul*,
2022 WL 4637843 (E.D.N.Y. Sept. 30, 2022) ...........................................23, 24

*Dr. A.* v. *Hochul*,
2021 WL 4189533 (N.D.N.Y. Sept. 14, 2021) ...........................................7

*Dr. A.* v. *Hochul*,
567 F. Supp. 3d 362 (N.D.N.Y. 2021) ...........................................7

*Fallon* v. *Mercy Catholic Med. Ctr. of Se. Penn.*,
877 F.3d 487 (3d Cir. 2017) ..........................................................17, 18

*Frilando* v. *New York City Transit Auth.*,
513 F. Supp. 3d 356 (S.D.N.Y. 2021), *aff'd*, 2022 WL 3569551
(2d Cir. Aug. 19, 2022) ...........................................................25, 27

*Fuentes* v. *Mehra*,
2015 WL 3754705 (D.N.J. June 15, 2015) ...........................................13, 15

*George* v. *Rehiel*,
738 F.3d 562 (3d Cir. 2013) ...........................................................11

*Golod* v. *Bank of Am. Corp.*,
403 F. App'x 699 (3d Cir. 2010) ...........................................................11

*Groeber* v. *Friedman*,
555 F. App'x 133 (3d Cir. 2014) ...........................................................18, 19, 20

*Groff* v. *DeJoy*,
35 F.4th 162 (3d Cir. 2022), *cert. granted*, 143 S. Ct. 646 (2023) ....................18

*Hamilton* v. *City of New York*,
563 F. Supp. 3d 42 (E.D.N.Y. 2021) ...................................................23

*Hashmi* v. *City of Jersey City*,
2021 WL 4059852 (D.N.J. Sept. 7, 2021) .........................................20

*Hussain* v. *Nicholson*,
435 F.3d 359 (D.C. Cir. 2006)............................................................20

*Int'l Shoe Co.* v. *Washington*,
326 U.S. 310 (1945)............................................................................12

*Lowe* v. *Mills*,
2022 WL 3542187 (D. Me. Aug. 18, 2022) .......................................23

*Lowman* v. *NVI LLC*,
821 F. App'x 29 (2d Cir. 2020) .....................................18, 19, 22, 24

*Maharaj* v. *Time Warner Cable, Inc.*,
2014 WL 7366101 (D.N.J. Dec. 17, 2014).........................................29

*Malik* v. *Cabot Oil & Gas Corp.*,
710 F. App'x 561 (3d Cir. 2017) .......................................................13

*Mangan* v. *Corporate Synergies Grp., Inc.*,
834 F. Supp. 2d 199 (D.N.J. 2011)................................................31, 32

*McBride* v. *BIC Consumer Prods.*,
583 F.3d 92 (2d Cir. 2009) ................................................................27

*Mille*r v. *Port Auth. of N.Y. & N.J.*,
788 F. App'x 886 (3d Cir. 2019) .......................................................25

*Miller Yacht Sales, Inc.* v. *Smith*,
384 F.3d 93 (3d Cir. 2004) ..........................................................10, 12

*Mutasa* v. *U.S. Citizenship & Immigr. Serv.*,
531 F. Supp. 3d 888 (D.N.J. 2021)....................................................33

*Perry* v. *Nat'l Ass'n of Home Builders of U.S.*,
2020 WL 5759766 (D. Md. Sept. 28, 2020).......................................15

*Read* v. *Profeta*,
   397 F. Supp. 3d 597 (D.N.J. 2019) ...............................................................31, 32

*Reyes* v. *Westchester Cty. Health Care Corp.*,
   2021 WL 4944285 (2d Cir. Oct. 25, 2021) ........................................................19

*Robinson* v. *Children's Hosp. Bos.*,
   2016 WL 1337255 (D. Mass. Apr. 5, 2016) ..................................................24, 25

*Rodi* v. *S. New England Sch. of Law*,
   255 F. Supp. 2d 346 (D.N.J. 2003) ....................................................................15

*Sealey* v. *Affiliated Computer Servs., Inc.*,
   2012 WL 729217 (W.D.N.Y. Mar. 6, 2012), *aff'd*, 522 F. App'x 35
   (2d Cir. 2013) ......................................................................................................19

*Sides* v. *NYS Div. of State Police*,
   2005 WL 1523557 (N.D.N.Y. June 28, 2005) ...................................................25

*Sutton* v. *Providence St. Joseph Med. Ctr.*,
   192 F.3d 826 (9th Cir. 1999) ..............................................................................23

*Taylor* v. *Phoenixville Sch. Dist.*,
   184 F.3d 296 (3d Cir. 1999) ...............................................................................27

*Time Share Vacation Club* v. *Atlantic Resorts, Ltd.*,
   735 F.2d 61 (3d Cir. 1984) .................................................................................10

*Together Emps.* v. *Mass Gen. Brigham Inc.*,
   573 F. Supp. 3d 412 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir.
   2022) ...................................................................................................................26

*Trans World Airlines, Inc.* v. *Hardison*,
   432 U.S. 63 (1977) ..............................................................................................21

*Varol* v. *Pave-Rite, Inc.*,
   472 F. App'x 102 (3d Cir. 2012) ........................................................................20

*We The Patriots USA, Inc.* v. *Hochul*,
   17 F.4th 266, 272 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir.
   2021), *and cert. denied sub nom. Dr. A.* v. *Hochul,* 142 S. Ct. 2569
   (2022) ...............................................................................................................6, 22

*We The Patriots USA, Inc.* v. *Hochul*,
    Nos. 21-2179, 21-2566, 2021 WL 5103443 (2d Cir. Oct. 29, 2021) ...................7

*Yisrael* v. *Per Scholas, Inc.*,
    2004 WL 744485 (S.D.N.Y. Apr. 7, 2004) .......................................................18

**Statutes**

28 U.S.C. § 2201 ..............................................................................6, 13, 35, 36

42 U.S.C. § 2000e-2(a)(1)..............................................................................19, 21

42 U.S.C. § 2000e(j) .........................................................................................18

Title VII of the Civil Rights Act of 1964...........................................................*passim*

N.Y. Pub. Health Law § 2806...........................................................................6, 23

**Other Authorities**

10 NYCRR Section 2.61(a)(2) .............................................................................9

44 N.Y. Reg. 10-14 (June 22, 2022) ....................................................................11

*COVID Data Tracker*,
    CDC, https://covid.cdc.gov/covid-data-tracker/#vaccinations_vacc-
    total-admin-rate-total (last visited Feb. 26, 2023) .................................................4

*COVID-19 Data Tracker*,
    CDC, https://covid.cdc.gov/covid-data-tracker/#datatracker-home
    (last visited Feb. 26, 2023)................................................................................4

Fed. R. Civ. P. 12(b)(2)......................................................................................10

Frequently Asked Questions Regarding the Prevention of COVID-19
    Transmission by Covered Entities Emergency Regulation, New
    York State Department of Health (Aug. 26, 2021), *available at*
    https://coronavirus.health.ny.gov/system/files/documents/2022/01/
    healthcare-worker-booster-requirement-faqs_0.pdf...........................................22

Letter from Deputy Director Jennifer L. Treacy, Office of Primary
    Care and Health Systems Management, DOH (Nov. 15, 2021),
    *available at*
    https://www.health.ny.gov/professionals/hospital_administrator/let
    ters/2021/docs/dal_21-11.pdf ...............................................................8

N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61............................................9

N.Y. Comp. Codes R. & Regs. tit. 10 § 2.61(a)(2)...................................22

N.Y. Comp. Codes R. & Regs. tit. 10 § 2.61(c)–(d).................................25

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3 (2001) ..............................8

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3(b)(10)(i)–(ii) (2022).......8

The National Academies of Sciences, Engineering, and Medicine,
    Standing Committee on Emerging Infectious Diseases and 21st
    Century Health Threats, *Rapid Expert Consultation on
    Understanding Causes of Health Care Worker Deaths Due to the
    COVID-19 Pandemic* (Dec. 10, 2020),
    https://www.nap.edu/read/26018/chapter/1 ........................................7

U.S. Const. amend. I ................................................................................10

U.S. Const. amend. XIV ..........................................................................10

U.S. Equal Emp't Opportunity Comm'n, Directives Transmittal:
    EEOC Compl. Man., No. 915.003, at 48-49 (Jan. 15, 2021), https://
    www.eeoc.gov/policy/docs/religion.html#_ftnref122.......................29

*Variants of the Virus*, CDC, https://www.cdc.gov/coronavirus/2019-
    ncov/variants/about-variants.html (last updated Feb. 6, 2023) ..........5

EEOC, *What You Should Know About COVID-19 and the ADA, the
    Rehabilitation Act, and Other EEO Laws* at D.15 (last updated July
    12, 2022), *available at* https://www.eeoc.gov/wysk/what-you-
    should-know-about-covid-19-and-ada-rehabilitation-act-and-other-
    eeo-laws ...........................................................................................25

Defendant The New York Presbyterian Hospital s/h/a New York Presbyterian Hospital ("NYPH" or the "Hospital") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint in its entirety.

## PRELIMINARY STATEMENT

Plaintiff is a former Hospital employee who alleges that he was discriminated against because of his alleged religious beliefs when he was not granted a religious exemption from COVID-19 vaccination or permitted to permanently work remotely as an alternative to complying with the COVID-19 vaccination requirement for healthcare workers imposed by the New York State Department of Health (the "DOH Mandate"). The DOH Mandate requires healthcare institutions to ensure that all employees who interact directly or indirectly with patients, staff, or residents are vaccinated against COVID-19 unless they qualify for a narrowly prescribed medical exemption (for which Plaintiff does not claim he is eligible). Stated plainly, the *only* accommodation permitted by New York State law from the COVID-19 vaccination requirement for medically eligible healthcare workers who—like Plaintiff—qualify as covered "personnel" is a permanent, fully remote position. For multiple reasons, Plaintiff's Complaint fails as a matter of law and pleading.

*First*, Plaintiff has failed to show that NYPH is subject to the general or specific personal jurisdiction of this Court. Neither Plaintiff's allegations that one of his job duties required work at a data center located in New Jersey nearly a decade

ago nor the fact that he worked remotely from his home in New Jersey at the height of the pandemic suffice to demonstrate that NYPH had continuous and systematic contacts with New Jersey that render the Hospital essentially at home in the forum state. Nor do the allegations establish that NYPH purposefully directed its activities toward New Jersey or that this case arises from those directed activities.

*Second*, Plaintiff's religious discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII") fails. As the Complaint makes clear, Plaintiff's stated beliefs conflict with a requirement imposed by state law, not by the Hospital. The Complaint further fails to plausibly allege that the Hospital discriminated against Plaintiff because of his asserted religious beliefs. Moreover, as a matter of law, the Hospital was not required to either grant an exemption that would permit Plaintiff to work onsite without being vaccinated (in violation of the DOH Mandate) or create a permanent remote position to accommodate Plaintiff's asserted religious beliefs.

*Third*, Plaintiff's retaliation claim fails because the Complaint is bereft of any allegations that give rise to any inference that the Hospital took any action against Plaintiff because he engaged in protected activity under Title VII. To the contrary, the Complaint and the documents incorporated by reference make clear that the Hospital allowed Plaintiff to seek a religious exemption and deemed him to have resigned because he refused to comply with the State's vaccination requirement,

2

which applied to all medically eligible personnel, regardless of whether their objections to vaccination were religious or non-religious.

*Fourth*, it is clear from the face of the Complaint that Plaintiff's defamation claims fail as a matter of law because the alleged statements were opinions, jokes, or true and therefore plainly *not* defamatory.

*Fifth*, Plaintiff has no claim sufficient to support the relief he seeks under the Declaratory Judgment Act ("DJA").

Accordingly, Plaintiff's Complaint against NYPH should be dismissed.

## STATEMENT OF FACTS

### A.    The New York Presbyterian Hospital

The New York Presbyterian Hospital is a premier not-for-profit hospital incorporated and headquartered in New York, Declaration of Kenneth Thibault ("Thibault Decl.") ¶ 2, with roots in two historic healthcare institutions: the New York Hospital founded in 1771 and the Presbyterian Hospital founded in 1868. In collaboration with two renowned medical schools, the Columbia University Vagelos College of Physicians & Surgeons and Weill Cornell Medicine, the Hospital is consistently regarded as a leader in education, ground-breaking medical research, and patient-centered care. With more than 6,500 affiliated physicians and over 20,000 staff, the Hospital provides health care services through multiple world-class

campuses located in New York City and Westchester, and receives more than two million visits annually, including more than 310,000 emergency department visits.

### B.    The COVID-19 Pandemic and NYPH's Vaccination Program

Since its emergence in early 2020, COVID-19 has caused over 103 million infections and nearly 1.1 million deaths in the United States.[1]  These numbers are likely an undercount,[2]  and do not capture the devastating physical and emotional toll that the pandemic has unleashed on workers in hospital settings.  From the beginning of the pandemic, the Hospital has been at the forefront of the fight to help prevent the transmission of COVID-19.

Fortunately, in late 2020 and early 2021, the U.S. Food and Drug Administration authorized the use of three COVID-19 vaccines that are highly effective at preventing transmission of the virus.  More than 671 million doses of these vaccines have now been safely administered in the United States.[3]  The virus,

---

[1]    *See   COVID-19   Data   Tracker*,   CDC,   https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited Feb. 26, 2023).

[2]    The National Academies of Sciences, Engineering, and Medicine*,* Standing Committee on Emerging Infectious Diseases and 21st Century Health Threats, *Rapid Expert Consultation on Understanding Causes of Health Care Worker Deaths   Due   to   the   COVID-19   Pandemic*   (Dec. 10,   2020), https://www.nap.edu/read/26018/chapter/1 (describing how the CDC COVID-19 Data Tracker relies on data where occupation type and job setting information is frequently missing).

[3]    *COVID   Data   Tracker*,   CDC,   https://covid.cdc.gov/covid-data-tracker/#vaccinations_vacc-total-admin-rate-total (last visited Feb. 26, 2023).

however, is constantly changing, resulting in new and sometimes highly infectious variants, such as Delta and Omicron, thereby increasing the urgency for more individuals to get vaccinated against COVID-19.[4]

Healthcare settings in particular present a high risk of contagious disease transmission.  As such, several states, including New York, historically have required all medically eligible healthcare workers to be vaccinated against certain highly communicable diseases.  See, e.g., N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3(b)(10)(i)–(ii) (2022).  For instance, New York state has long required its healthcare workers to be vaccinated against measles, rubella, and varicella without permitting religious exemptions.  N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3 (2001).

In June 2021, the Hospital notified all employees, including Plaintiff, that they must receive their first dose of the COVID-19 vaccine by September 1, 2021 or else obtain an approved exemption.  Compl. ¶¶ 27, 29.  The Hospital provided employees with the opportunity to seek exemptions from the vaccination requirement for qualifying religious reasons, among others, and provided instructions on the process for submitting an exemption request.  *See* Compl. ¶¶ 27–33.

---

[4]    As the CDC has advised, "[n]ew variants of . . . the virus that causes COVID-19, will continue to occur." *Variants of the Virus*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/variants/about-variants.html  (last updated Feb. 6, 2023).

### C.    The New York Department of Health's Vaccination Mandate

On August 26, 2021, the DOH issued an emergency regulation mandating that hospitals and other healthcare institutions require medically eligible "personnel" to be fully vaccinated against COVID 19. *See id.* ¶ 32; N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61. The DOH Mandate defines covered "personnel" as "all persons employed . . . with a covered entity . . . who engage in activities such that if they were infected with COVID 19, they could potentially expose other covered personnel, patients or residents to the disease." DOH Mandate § 2.61(a)(2). The DOH Mandate expressly allows medical, but not religious, exemptions. *Id.* § 2.61(d); see Compl. ¶ 32.[5] As a New York-based hospital, NYPH was obligated to comply with the DOH Mandate and was subject to stringent penalties for noncompliance. See N.Y. Pub. Health Law § 2806(1)(a).

The Second Circuit has upheld the DOH Mandate—and in particular its prohibition against religious exemptions for covered personnel—in the face of legal challenges brought under Title VII and the U.S. Constitution. Notably, on September 14, 2021, a federal district court (the "Dr. A Court") issued an order

---

[5]    *See We The Patriots USA, Inc.* v. *Hochul*, 17 F.4th 266, 272 (2d Cir.) ("The [DOH Mandate] establishes a medical exemption to the vaccination requirement, but— consistent with New York's prior vaccination requirements for healthcare workers—does not include an exemption based on religious belief."), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021), *and cert. denied sub nom. Dr. A.* v. *Hochul*, 142 S. Ct. 2569 (2022).

6

temporarily enjoining the DOH Mandate to the extent it required employers to deny or revoke approved or pending religious exemption requests.[6]  On October 12, 2021, the court converted the order into a preliminary injunction,[7] which the Second Circuit vacated on October 29, 2021.  *We The Patriots USA, Inc.* v. *Hochul*, Nos. 21-2179, 21-2566, 2021 WL 5103443, at *1 (2d Cir. Oct. 29, 2021).   In a November 4, 2021 opinion setting forth the reasons for its decision, the Second Circuit held that the plaintiffs were not entitled to a preliminary injunction against enforcement of the DOH Mandate because, among other reasons, plaintiffs were unlikely to prevail on their claims that the Mandate violated Title VII or the First or Fourteenth Amendments of the U.S. Constitution.  17 F.4th at 280–94.  The Second Circuit noted that, for decades, vaccination has been a condition of employment for medically eligible employees in the healthcare field.  *Id.* at 287, 294.  The Second Circuit further made clear that religious exemptions allowing covered personnel to continue working at their current positions while remaining unvaccinated are not permitted under the DOH Mandate.  *Id.* at 272, 275.

On November 15, 2021, the DOH notified all covered entities that, beginning November 22, 2021, they must ensure that personnel who were previously granted religious exemptions have documentation of either a first dose of a COVID 19

---

[6]  *Dr. A.* v. *Hochul*, 2021 WL 4189533, at *1 (N.D.N.Y. Sept. 14, 2021).

[7]  *Dr. A.* v. *Hochul*, 567 F. Supp. 3d 362, 377 (N.D.N.Y. 2021).

vaccine or a valid medical exemption.[8]   On June 22, 2022, the DOH Mandate became a final rule, making COVID-19 vaccination a permanent requirement for all medically eligible healthcare workers.  *See* 44 N.Y. Reg. 10–14 (June 22, 2022).

### D.   Plaintiff's Employment at the Hospital

Plaintiff, a citizen of New Jersey, began working for NYPH in 1982 and eventually was promoted to the position of Director of Information Technology. Compl. ¶¶ 8, 18, 19.   Beginning in 1990, Plaintiff "work[ed] remotely when needed."  *Id.* ¶ 20.   From 2007 to 2014, Plaintiff's job responsibilities included managing a data center located in Carlstadt, New Jersey, during which time NYPH approved Plaintiff to work a hybrid schedule whereby he could work both from his home in New Jersey and in person at the office each week.  *Id.* ¶¶ 13, 21, 22.  At all times throughout his employment, Plaintiff had an office and reported to a team based in New York.  Thibault Decl. ¶¶ 5, 8.  He worked on-site at the data center only occasionally,  *id.* ¶ 5, and as of December 2014 ceased to have any job responsibility in New Jersey,  *id.* ¶ 7.  On February 28, 2020, at the height of the pandemic, Plaintiff (like many employees) temporarily began working remotely on a full-time basis while still based in New York.  Compl. ¶ 24; Thibault Decl. ¶ 8.

---

[8]   Letter from Deputy Director Jennifer L. Treacy, Office of Primary Care and Health Systems Management, DOH (Nov. 15, 2021), *available at* https://www.health.ny.gov/professionals/hospital_administrator/letters/ 2021/docs/dal_21-11.pdf.

### E.    Plaintiff's Refusal to Comply with the State Law Vaccination Requirement

On July 29, 2021, Plaintiff submitted a request for a religious exemption from the COVID-19 vaccination requirement. *Id.* ¶ 28. The Hospital reviewed the information Plaintiff submitted in support of his request and denied the request, after which Plaintiff was permitted to (and did) submit additional information in support of his request. *Id.* ¶¶ 30, 31.

While Plaintiff's appeal was pending, the DOH issued its Mandate on August 26, 2021, and NYPH accordingly informed Plaintiff via e-mail on August 30, 2021 that it could no longer consider religious exemption requests. *Id.* ¶ 32; Ex. A.[9] NYPH further communicated that if Plaintiff chose not to comply with the vaccination requirement by the September 1, 2021 deadline, he would be placed off duty for seven days without pay and, should his non-compliance continue, he would "be deemed to have opted to resign." Ex. A.

Plaintiff did not comply with the vaccination requirement. Accordingly, consistent with its August 30, 2021 notice, NYPH placed Plaintiff off duty and

---

[9]  NYPH's August 30, 2021 communication is referenced in paragraph 32 of the Complaint. "The doctrine of incorporation by reference allows a court deciding a motion to dismiss to consider a document that is explicitly referred to or relied on in the complaint, where the defendant attaches an undisputedly authentic copy of that document as an exhibit to the motion to dismiss." *In re Cognizant Tech. Sols. Corp. Derivative Litig.*, 2022 WL 4483595, at *7 n.4 (D.N.J. Sept. 27, 2022).

without pay for seven days beginning September 4, 2021, and on September 11, 2021, informed Plaintiff that he had been deemed to have opted to resign.  Compl. ¶ 34.

### F.    Procedural History

On December 26, 2022, Plaintiff commenced this lawsuit, asserting discrimination and retaliation claims under Title VII, a defamation claim, and a purported claim under the DJA.  ECF No. 1.  In addition, Plaintiff seeks a declaratory judgment that NYPH violated Title VII and an injunction requiring NYPH to provide religious exemptions and accommodations as an alternative to vaccination against COVID-19.  *Id.*

## ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), "plaintiff must sustain [his] burden of proof in establishing jurisdictional facts through sworn affidavits and or other competent evidence." *Miller Yacht Sales, Inc.* v. *Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004). "At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Time Share Vacation Club* v. *Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984) (affirming district court's dismissal for lack of personal jurisdiction where plaintiff submitted "affidavits which parrot and do no more than restate plaintiff's allegations").

10

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). Claims are facially plausible only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Golod* v. *Bank of Am. Corp.*, 403 F. App'x 699, 702 (3d Cir. 2010) (citations omitted). Moreover, a court's assessment of a pleading's sufficiency and the plausibility of claims under Rule 12(b)(6) depends on, among other considerations, "obvious alternative explanations which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *George* v. *Rehiel*, 738 F.3d 562, 586 (3d Cir. 2013).

Employment discrimination claims are subject to the standard of pleading set forth by the Supreme Court in *Twombly* and *Iqbal*. The plaintiff's claim must plead "sufficient factual matter that permits the reasonable inference that [he] was terminated or retaliated against because of [his protected characteristic]." *Golod*, 403 F. App'x at 702.

## I.     The Court Lacks Personal Jurisdiction Over Defendant

Plaintiff's claims should be dismissed because Plaintiff has failed to establish that NYPH is "essentially at home" in New Jersey, or that NYPH has taken any actions to "purposefully avail" itself of this State so as to subject it to either general or specific jurisdiction in a manner that would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945). To the contrary, there is no dispute that NYPH is incorporated and has its principal place of business in New York. Thibault Decl. ⁋ 2; Compl. ¶ 6. And, the Complaint is bereft of any allegations demonstrating that NYPH purposefully directed its activities at New Jersey or that Plaintiff's claims arose out of such activities. *Daimler AG* v. *Bauman,* 571 U.S. 117, 139 (2014). With no plausible basis for establishing personal jurisdiction over NYPH, Plaintiff's claims must be dismissed.

### A.     No General Jurisdiction Exists Over NYPH

Plaintiff cannot meet his burden of establishing a *prima facie* case of general personal jurisdiction. New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d at 96 (citing N.J. Ct. R. 4:4–4(c)). General jurisdiction exists in the place where the corporation is incorporated or has its principal place of business. *See Daimler AG* v. *Bauman*, 571 U.S. 117, 137 (2014). While such

"paradigm . . . base[s] for general jurisdiction" are not exhaustive, *id.* 139 n. 19, this Circuit has cautioned that "it is incredibly difficult to establish general jurisdiction over a corporation in a forum other than the place of incorporation or principal place of business." *Malik* v. *Cabot Oil & Gas Corp.*, 710 F. App'x 561, 564 (3d Cir. 2017) (internal quotation marks omitted).

NYPH is not subject to general jurisdiction in New Jersey because it is incorporated in New York and has its principal place of business in New York. Thibault Decl. ⫝̸ 2; *see* Compl. ¶ 6.  Plaintiff fails to allege any facts that would render NYPH "essentially at home" in New Jersey, nor could he.  In *Fuentes* v. *Mehra*, the court held that "doing business in New Jersey" through cancer center locations within New Jersey was insufficient to subject a Pennsylvania hospital to general jurisdiction. 2015 WL 3754705, at 4, n.4 (D.N.J. June 15, 2015).  NYPH operates its healthcare locations exclusively in New York, Thibault Decl. ⫝̸ 3, and Plaintiff's vague allegation that NYPH owns, operates and/or leases data centers in New Jersey "plainly do[es] not approach [the] level" of "operations . . . so substantial and of such a nature as to render [NYPH] at home in [New Jersey]." *Daimler AG* v. *Bauman*, 571 U.S. 117, 139 n.19 (2014); *see also Fuentes*, 2015 WL 3754705, at *4 (finding that hospital was not "at home" in New Jersey "because it is incorporated in Pennsylvania and has its principal place of business in Pennsylvania.").

### B.    No Specific Jurisdiction Exists Over NYPH

Absent general jurisdiction, Plaintiff bears the burden of showing that the Hospital is subject to specific jurisdiction of the court.  In *Burger King Corp.*, the Supreme Court set out a three-part test for establishing specific jurisdiction over a non-resident defendant, which the Third Circuit has adopted:  The plaintiff must show that (1) the defendant has "purposefully directed [its] activities at the forum; (2) the litigation must "arise out of or relate" to at least one of those activities; and (3) exercise of jurisdiction would "comport with fair play and substantial justice." *Corigliano* v. *Classic Motor, Inc.*, 611 F. App'x 77, 79–80 (3d Cir. 2015) (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472, 476 (1985)).  Plaintiff has not, and cannot, make this showing.

Plaintiff appears to contend that NYPH is subject to specific jurisdiction because he sometimes performed work at one NYPH data center in New Jersey for 7 years, from 2007 to 2014, out of his 40-plus-year tenure.  *Id.* ¶¶ 7, 13, 21.  However, by Plaintiff's own admission, this work ended in December 2014, nearly seven years before the events at issue and has no bearing on his allegations of religious discrimination, retaliation, or defamation.  *Id.* ¶ 13; Thibault Decl. ¶¶ 4–8.  In fact, since 2015, Plaintiff has had no job responsibility requiring his presence in New Jersey.  Thibault Decl. ¶ 7.  As such, any contention that the events which gave rise to this litigation—all of which occurred in 2021—arise out of or relate to

Plaintiff's work at a New Jersey data center in 2007 to 2014 is simply meritless. *Fuentes*, 2015 WL 3754705, at *3 (finding no specific jurisdiction where plaintiff failed to show the alleged wrongful act arose from defendant's in-state activities); *Castoria* v. *Berlin Int'l Colorado, L.L.C.*, 2018 WL 3000173, at *7 (D.N.J. June 14, 2018) (finding no specific jurisdiction where plaintiff's claim—that he was terminated after complaining about the company's alleged purchase of unapproved clones—did not arise out of defendant's alleged forum contact).

Nor does the fact of Plaintiff's New Jersey residence suffice to establish personal jurisdiction over the Hospital in New Jersey. "In remote-work cases, . . . a defendant's mere knowledge that an employee happens to reside in the forum state and conduct some work from home does not constitute purposeful availment." *Perry* v. *Nat'l Ass'n of Home Builders of U.S.*, 2020 WL 5759766, at 5 (D. Md. Sept. 28, 2020) (collecting cases). In such cases, "the plaintiff's decision to work remotely from [another state] was a unilateral decision that the foreign . . . defendant employer merely accommodated," which is insufficient to establish specific jurisdiction. *Id.* (internal quotation marks and citation omitted) (collecting cases); *see Rodi* v. *S. New England Sch. of Law*, 255 F. Supp. 2d 346, 350–51 (D.N.J. 2003) (finding that defendant school's response to N.J. plaintiff's unilateral actions to seek information from an out-of-state school did not give rise to specific jurisdiction).

Similarly here, Plaintiff has not alleged that the Hospital hired Plaintiff specifically to perform work in New Jersey or that his work on behalf of the Hospital at the time of his separation supported any activities in New Jersey. To the contrary, he alleges that he was hired by a New York employer in 1982, that he managed and oversaw a New Jersey-based data center (as one part of his job duties) for only 7 years of his 40-year tenure (from 2007 – December 2014), and that he was permitted to work on a hybrid schedule which required him to work in-person in NYPH's New York offices part-time until the start of the pandemic, when he was permitted to work remotely full-time on a temporary and conditional basis, pursuant to the terms of his telecommuting agreement. Compl. ¶¶ 6, 13, 18, 20–22, 36; Ex. B (telecommuting agreement). Indeed, at all times during Plaintiff's employment, Plaintiff's assigned office was in New York and he reported to a team in New York. Thibault Decl. ⁋ 5. After December 2014 and through the end of his employment—including the time period during which his claims arose— none of his job responsibilities required him to be in New Jersey. *Id.* ⁋⁋ 7–8.

Because Plaintiff has not stated allegations (nor could he) sufficient to show that his claims arise out of any activities that NYPH purposefully directed at New Jersey, the Complaint should be dismissed for lack of personal jurisdiction. *See Callahan* v. *Wisdom*, 2020 WL 2061882, at *12 (D. Conn. Apr. 29, 2020) (no personal jurisdiction where defendant's contacts with the forum state "as they related

to the instant dispute begin and end with [the plaintiff]" (citing *Walden* v. *Fiore*, 571 U.S. 277, 285 (2014))); *cf. Burger King*, 471 U.S. at 480 (minimum contacts test met where defendant "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida").

## II.    Plaintiff Fails to State a Religious Discrimination Claim Under Title VII

Plaintiff claims that he was discriminated against on the basis of his religious views in violation of Title VII when he was not permitted to work onsite while unvaccinated or given a permanent remote work position as an alternative to complying with the COVID-19 vaccination requirement for healthcare workers imposed by the DOH Mandate and the Hospital thereafter deemed him to have resigned from employment on September 11, 2021 due to his non-compliance.

To state an employment discrimination claim under Title VII, a plaintiff must plausibly plead that: (1) he holds a sincere religious belief that conflicted with an employment requirement, (2) he informed his employer of the conflict, (3) he suffered an adverse employment action due to his decision not to comply with the conflicting requirement, and (4) the circumstances surrounding the adverse employment action give rise to an inference of unlawful discrimination. *See Fallon* v. *Mercy Catholic Med. Ctr. of Se. Penn.*, 877 F.3d 487, 490 (3d Cir. 2017); *Groeber* v. *Friedman*, 555 F. App'x 133, 135 (3d Cir. 2014); *Lowman* v. *NVI LLC*, 821 F. App'x 29, 31–32 (2d Cir. 2020). Although the plaintiff need not establish

each of these *prima facie* elements at the pleading stage, he must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Groeber*, 555 F. App'x at 135 (citation omitted). Even where such elements are plausibly pleaded, employer liability under Title VII is precluded where providing the requested religious accommodation would impose an "undue hardship" on the employer. *See* 42 U.S.C. § 2000e(j); *Groff* v. *DeJoy*, 35 F.4th 162, 174 (3d Cir. 2022), *cert. granted*, 143 S. Ct. 646 (2023).

As described below, it is evident from the face of the Complaint, and demonstrated by well-settled precedent, that Plaintiff's claims fail as a matter of law and pleading.

### A. The Complaint Fails to Plausibly Plead That Plaintiff's Stated Beliefs Conflict with an Employment Requirement.

To establish a prima facie case of religious discrimination, Plaintiff must plead that his alleged beliefs "conflicted with a job requirement." *Fallon*, 877 F.3d at 490. Where, as here, the complaint makes clear that the plaintiff's religious objection "conflicts not with an employment requirement, but with [state] law," he cannot establish a prima facie case of religious discrimination under Title VII. *Yisrael* v. *Per Scholas, Inc.*, 2004 WL 744485, at *3 (S.D.N.Y. Apr. 7, 2004) (no prima facie case where religious belief conflicted "not with an employment requirement, but with federal law"). Here, Plaintiff alleges that the Hospital approved "a hybrid schedule" that enabled him to "work[] remotely from his home

18

for the majority"—but not all of—"the time."  Compl. ¶¶ 23–24.  The Complaint

thus makes clear that Plaintiff could have "potentially expose[d] *other covered*

*personnel*, patients or residents"  to COVID-19, thereby satisfying the definition of

covered "personnel."  N.Y. Comp. Codes R. & Regs. tit. 10 § 2.61(a)(2) (emphasis

added).  Because Plaintiff's refusal to become vaccinated conflicts with a state law

requirement to which he was subject, his claims require dismissal.

### B.     The Complaint Fails to Plausibly Plead That Any Adverse Action was "Because of" Plaintiff's Religious Beliefs.

Plaintiff's religious discrimination claims also must be dismissed because the

Complaint fails to plead facts that support an inference that the Hospital

discriminated against him "because of" his religion, as required to establish a

Title VII discrimination claim.  42 U.S.C. § 2000e-2(a)(1); *Groeber* , 555 F. App'x

at 135; *Lowman*, 821 F. App'x at 31.  It is well settled that dismissal of Title VII

claims is warranted at the pleading stage where plaintiffs do "not allege that [they]

were] discriminated against because of [their] religion."   *Sealey* v. *Affiliated*

*Comput. Servs., Inc.*, 2012 WL 729217, at *3 (W.D.N.Y. Mar. 6, 2012), *aff'd*, 522

F. App'x 35 (2d Cir. 2013); *see Reyes* v. *Westchester Cty. Health Care Corp.*, 2021

WL 4944285, at *4 (2d Cir. Oct. 25, 2021) (affirming dismissal of failure-to-

accommodate claim where the plaintiff failed to allege that her employer

discriminated against her "because of" her national origin); *cf. Groeber*, 555 F.

App'x at 135 (affirming dismissal of Title VII race discrimination claim for failure

19

to plead facts demonstrating discriminatory motive or that "someone similarly situated was treated more favorably"); *Varol* v. *Pave-Rite, Inc.*, 472 F. App'x 102, 103–104 (3d Cir. 2012) (similar).

In *Billings*, for example, the court dismissed a Title VII religious discrimination claim as it was clear from the pleadings that the employee was "dismissed for non-discriminatory reasons." *Billings* v. *N.Y.S. Dep't of Corr. & Cmty. Supervision*, 2021 WL 4150925, at *6 (S.D.N.Y. Sept. 10, 2021). Similarly, here, the Complaint makes clear that Plaintiff was separated because the NYS DOH adopted a COVID-19 vaccination requirement for healthcare workers that "exclude[d] religious exemptions as an alternative to receiving the vaccine." Compl. ¶¶ 32–33. Indeed, Plaintiff has not plausibly alleged (nor could he) any suggestion of animus, let alone that Plaintiff's religious beliefs contributed to the Hospital's decision to enforce its vaccination requirement. *See Hussain* v. *Nicholson*, 435 F.3d 359, 365 (D.C. Cir. 2006) (rejecting Title VII claim and concluding that the district court properly disregarded plaintiff's allegations "of religious animus" because they "consisted merely of conclusory allegations"); *Hashmi* v. *City of Jersey City*, 2021 WL 4059852, at *8 (D.N.J. Sept. 7, 2021) (dismissing disparate treatment claim where plaintiff failed to allege sufficient facts that he was "treated differently than similarly situated non-religious employees"). To the contrary, the Complaint makes clear that the Hospital *permitted* religious exemptions until it was prohibited from

20

doing so by state law,  Compl. ¶¶ 27–28, 32–33, and fails to allege that similarly situated employees who refused to be vaccinated for non-religious reasons were treated differently.  Accordingly, because Plaintiff's own allegations make clear that the Hospital did not discriminate against him "because of" his religion, 42 U.S.C. § 2000e-2(a)(1), Plaintiff's religious discrimination claims fail and should be dismissed.

### C. As a Matter of Law, the Hospital was Not Required to Provide Plaintiff with a Religious Accommodation from the Vaccination Requirement.

Even if the vaccination requirement was deemed to be a Hospital requirement, the Hospital was not obligated to provide Plaintiff with a religious accommodation because doing so would constitute undue hardship as a matter of well-settled law. In the Title VII context, "undue hardship" means "more than a *de minimis* cost" on the operation of the employer's business.  *See Trans World Airlines, Inc.* v. *Hardison*, 432 U.S. 63, 84 (1977).  Here, accommodating Plaintiff's beliefs by permitting him either to remain employed in the same role, without being vaccinated against COVID-19, or to work fully remotely on a permanent basis would have amounted to more than a *de minimis* cost to the Hospital.

Contrary to Plaintiff's contention that the Hospital could have accommodated Plaintiff by granting an exemption from COVID-19 vaccination and permitting him to undergo regular testing instead, Compl. ¶¶ 38, 64–65, 69, it is well settled that the

DOH Mandate does not permit religious exemptions. *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 10 § 2.61(c)–(d); *We The Patriots USA, Inc.* v. *Hochul* , 17 F.4th 266, 272 (2d Cir. 2021). As the DOH Commissioner has stated: "there are no religious exemptions provided for through [the DOH Mandate]."[10]

Undue hardship exists where, as here, accommodating an employee's religious beliefs would require the employer to violate state law. For instance, in *Lowman* v. *NVI LLC*, the Second Circuit affirmed the district court's decision granting an employer's motion to dismiss the Plaintiff's Title VII religious discrimination claim on the ground that the accommodation sought would have caused the employer to violate federal law and subject the employer to potential penalties. 821 F. App'x at 31–32. Likewise, in *Does 1-2* v. *Hochul*, the court granted the Hospital's motion to dismiss virtually identical Title VII claims brought by former employees because granting the employees' requested religious exemptions from COVID-19 vaccination would have violated the DOH Mandate. 2022 WL 4637843, at *15–16 (E.D.N.Y. Sept. 30, 2022) ("The . . . accommodation the plaintiffs seek—a religious exemption from the vaccine requirement—would

---

[10]  *See* Frequently Asked Questions (FAQs) Regarding the Prevention of COVID-19 Transmission by Covered Entities Emergency Regulation, N.Y. Dep't of Health (Aug. 26, 2021), https://coronavirus.health.ny.gov/system/files/documents/2022/01/healthcare-worker-booster-requirement-faqs_0.pdf.

impose an undue hardship on the Private Defendants because it would require them to violate state law.") (citations omitted); *see also Lowe* v. *Mills*, 2022 WL 3542187, at \*6–10 (D. Me. Aug. 18, 2022) (same).   Many courts have reached the same conclusion.   *See Bey* v. *City of New York*, 999 F.3d 157, 170 (2d Cir. 2021) ("Title VII cannot be used to require employers to depart from binding . . . regulations."); *Sutton* v. *Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) (same); *Bhatia* v. *Chevron U.S.A., Inc.*, 734 F.2d 1382, 1383–84 (9th Cir. 1984) (same); *Hamilton* v. *City of New York*, 563 F. Supp. 3d 42, 49 (E.D.N.Y. 2021) (same).   Accommodating Plaintiff by allowing him to remain in his position unvaccinated would have violated the DOH Mandate, thereby subjecting the Hospital to severe penalties, including potential revocation of its operating license. *See* N.Y. Public Health Law § 2806.

Undue hardship also exists as a matter of law where, as here, the accommodation sought—namely allowing Plaintiff to perform his in-person job duties unvaccinated—"would either cause or increase safety risks or the risk of legal liability for the employer."   *Robinson* v. *Children's Hosp. Bos.*, 2016 WL 1337255, at \*8 (D. Mass. Apr. 5, 2016) (internal quotation marks and citation omitted); *see also Does 1-2*, 2022 WL 4637843, at \*16 (concluding at the pleading stage that "[e]xempting the plaintiffs from the [DOH Mandate] would expose vulnerable patients and nursing home residents, as well as other healthcare workers, to the

COVID-19 virus, which is obviously a significant hardship").  "Title VII does not require employers to test their safety policies on employees to determine the minimum level of protection needed to avoid injury." *Robinson*, 2016 WL 1337255, at *8 (citation omitted).  Because the law does not impose an obligation on the Hospital to bear the public health and legal risks posed by permitting Plaintiff to perform his job duties unvaccinated, his claims should be dismissed on undue hardship grounds. *See Lowman*, 821 F. App'x at 32.

Nor does the law require the Hospital to create a new, fully remote position for Plaintiff.  As the Complaint makes clear, although Plaintiff was temporarily permitted to work remotely at the height of the pandemic, Plaintiff's job duties generally required him to work onsite with other staff.  *See* Compl. ¶¶ 20–24, 35–36.  And, as the EEOC has recognized, the fact that an employer has, at times, "chose[n] to permit telework, does not mean that the employer permanently changed a job's essential functions, that telework is always a feasible accommodation, or that it does not pose an undue hardship."[11]  In sum, the law does "not obligate[] [employers] to create a position to accommodate an employee's religious beliefs."

---

[11] EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* at D.15 (last updated July 12, 2022), *available at* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

*Robinson*, 2016 WL 1337255, at *8 (collecting cases).[12]  For this additional reason, Plaintiff's claims should be dismissed.

### D.    The Complaint Does Not Plausibly Allege That the Hospital Failed to Engage in the Interactive Process under Title VII.

Plaintiff's conclusory claim that the Hospital failed to engage in the interactive process under Title VII (Compl. ¶¶ 66–67) also fails.  As an initial matter, as courts in the Third Circuit have recognized, the alleged failure to engage in the interactive process—in and of itself—does not constitute an independent cause of action under Title VII.  *See Miller* v. *Port Auth. of N.Y. & N.J.*, 788 F. App'x 886, 890, n.19 (3d Cir. 2019); *see also Dodd* v. *SEPTA,* 2008 WL 2902618, at *9 n.6 (E.D. Pa. July 23, 2008) (noting that Title VII does not have interactive process requirement); *Frilando* v. *New York City Transit Auth.*, 513 F. Supp. 3d 356, 364 (S.D.N.Y. 2021) ("[F]ailure to engage in a good-faith interactive process is . . . not an independent cause of action" under Title VII), *aff'd*, 2022 WL 3569551 (2d Cir. Aug. 19, 2022).  In its Compliance Manual on Religious Discrimination, the EEOC

---

[12] Title VII also does not require the Hospital to accommodate Plaintiff by forcing other staff to assume his in-person duties. "[C]ourts have routinely held that the adverse effects that accommodations for religious practices might have on other employees can constitute undue hardship on the employer." *Sides* v. *N.Y.S. Div. of State Police*, 2005 WL 1523557, at *5 (N.D.N.Y. June 28, 2005).

expressly counsels that "[f]ailure to confer with the employee is not an independent violation of Title VII."[13]

Regardless, as the Complaint expressly alleges, Plaintiff availed *himself* of the Hospital's robust procedures by submitting a religious exemption request and participating in the Hospital's appeal process upon being informed that the Hospital had denied his initial request. Compl. ¶¶ 27–31. Courts have found that it is unlikely that complainants "will succeed in establishing a violation of Title VII for failure to engage in an 'interactive process'" on similar facts. *See*, *e.g.*, *Together Emps.* v. *Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 441–42 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022) (employer engaged in an interactive process in good faith where it formed a Religious Exemption Review Committee and permitted employees to send additional supporting documentation); *Barrington* v. *United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1110 (D. Colo. 2021) (holding that plaintiff was unlikely to succeed in establishing a violation of Title VII for failure to engage in interactive process where defendant represented "that employees who had requested accommodation were notified via email of the proposed accommodation and given five days to respond"). The Complaint makes clear that the Hospital had a robust

---

[13] U.S. Equal Emp't Opportunity Comm'n, Directives Transmittal: EEOC Compl. Man., No. 915.003, at 48–49 (Jan. 15, 2021), https://www.eeoc.gov/policy/docs/religion.html#_ftnref122.

process to make religious exemptions available until the DOH Mandate prohibited them.

Moreover, several courts have resoundingly rejected claims based on a purported failure to engage in the interactive process where, as here, the accommodation sought would constitute an undue burden as a matter of law. *See, e.g., Taylor* v. *Phoenixville Sch. Dist.*, 184 F.3d 296, 316 n.7 (3d Cir. 1999) ("[E]mployee will be at fault for the breakdown in the interactive process" for insisting on proposed accommodation that is "unreasonable as a matter of law."). For example, in *McBride* v. *BIC Consumer Prods.*, the Second Circuit held that an employer's failure to engage in a sufficient interactive process cannot form the basis of an ADA claim "if no reasonable accommodation was possible." 583 F.3d 92, 100–01 (2d Cir. 2009) (quoting *EEOC* v. *Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005) and *Fjellestad* v. *Pizza Hut of America, Inc.*, 188 F.3d 944, 952 (8th Cir. 1999)); *see also Frilando*, 513 F. Supp. 3d at 365(no violation of duty to engage in an interactive process under federal, state, city laws where defendants "corresponded with [plaintiff] . . . considered the requests, and discussed alternative accommodations"). Because that reasoning applies equally here—namely, the accommodation sought by Plaintiff would either require NYPH to violate State law or create a new, permanently remote job position— Plaintiff's interactive process claim fails as a matter of law and pleading.

27

### III.    Plaintiff Fails to State a Retaliation Claim Under Title VII

Plaintiff further does not (and cannot) plausibly plead a retaliation claim in violation of Title VII.  To establish a claim for retaliation under Title VII, Plaintiff must demonstrate that: (1) he participated in a protected activity; (2) the Hospital was aware of that activity; (3) the Hospital took an employment action disadvantaging him; and (4) there exists a causal connection between the protected activity and the adverse action.  *See Blakney* v. *City of Philadelphia*, 559 F. App'x 183, 185 (3d Cir. 2014).  To establish a causal connection, Plaintiff must plausibly allege that his "protected activity was a but-for cause of the alleged adverse action by the employer."  *Id.* (quoting *Univ. of Texas Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338, 362 (2013)).  Although "temporal proximity between the employer's protected activity and the alleged retaliatory action may satisfy the causal link element . . . where the timing is unusually suggestive of retaliatory motive," the "mere fact" that the adverse action occurred after the protected activity "will ordinarily be insufficient to satisfy the plaintiff's [pleading] burden." *Blakney*, 559 F. App'x at 185–86 (cleaned up).

Plaintiff alleges that the Hospital retaliated against him by denying his religious exemption request and terminating him.  Compl. ¶¶ 38–39, 60, 78.  His threadbare allegations fail to give rise to any inference of retaliatory intent on the basis of religion. The Complaint is devoid of well-pleaded facts demonstrating that

his request for a religious exemption was the reason for his separation from the Hospital, as opposed to his failure to comply with a vaccination requirement imposed by State law on all medically-eligible covered personnel.   To the contrary, as the Complaint alleges, the Hospital made religious exemptions available to all employees, including providing an appeal process, and discontinued providing religious exemptions only because State law required it to do so.  Compl. ¶¶ 32–33. Furthermore, as Plaintiff admits, the Hospital gave him repeated notice of, and opportunities to comply with, the DOH Mandate's vaccination requirement, and only separated him because he chose not to do so.  *Id.* ¶¶ 27–34.[14]

Nor can Plaintiff point to temporal proximity as an indirect indicator of causal connection.  The Third Circuit has held that temporal proximity is measured from when the employee first engages in protected activity and that "a temporal proximity

---

[14] At most Plaintiff alleges that the Hospital's Chief Information Officer ("CIO") expressed his view at an unspecified time that religious exemption requests would be denied (which, as discussed above, the DOH Mandate required) and that a Vice President of Human Resources made jokes about employees who requested religious exemptions.  Compl. ¶¶ 45–50.  But those factual recitals include "very little information about the context or content" of the interactions and "amount to unadorned, the defendant-unlawfully-harmed-me accusations," which are insufficient to state a Title VII claim.  *Maharaj* v. *Time Warner Cable, Inc.*, 2014 WL 7366101, at *3–*4 (D.N.J. Dec. 17, 2014).  Moreover, the Complaint is bereft of any facts suggesting that either employee was involved in the decision to separate Plaintiff or (as explained above) that Plaintiff's religious exemption request (which the Hospital permitted Plaintiff to submit before the DOH Mandate issued) played any role in the decision to separate Plaintiff, as opposed to the Hospital's need to comply with State law.

greater than ten days requires supplementary evidence of retaliatory motive," such as evidence that the plaintiff was subjected to "a pattern of antagonism"—*i.e.*, "a constant barrage of written and verbal warnings and disciplinary actions, all of which occurred soon after plaintiff's initial complaints"—or a "showing that the employer gave inconsistent records for terminating the employee." *Blakney*, 559 F. App'x at 186 (cleaned up). Because the Complaint fails to allege any evidence of retaliatory motive whatsoever—and, indeed, demonstrates that NYPH deemed Plaintiff to have resigned in order to comply with State law— Plaintiff's retaliation claim must be dismissed.

## IV.    Plaintiff Fails to State a Defamation Claim

Plaintiff asserts that two of NYPH's employees harmed Plaintiff's reputation among his former IT colleagues by (i) expressing a "personal opinion" on religious exemption requests; (ii) making "jokes" about employees who requested religious exemptions; and (iii) communicating during a Town Hall meeting that Plaintiff "resigned from his position as Director of IT." Compl. ¶¶ 45–54, 80–89. Plaintiff alleges that the purported statements by the NYPH employees led his former colleagues—upon whom he must rely for favorable references to obtain new employment—to believe that Plaintiff "voluntarily abandoned" his position when "in fact he was terminated as a result of his religion." *Id.* ¶¶ 82, 84–85. To state a claim for defamation under New Jersey law, Plaintiff must plausibly plead that

Defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had fault amounting at least to negligence. *See Read* v. *Profeta*, 397 F. Supp. 3d 597, 650 (D.N.J. 2019). To determine if a statement is defamatory, a court must consider "(1) the content, (2) the verifiability, and (3) the context of the challenged statements." *Id.* at 651. As described below, none of the statements pleaded by Plaintiff are defamatory as a matter of law.

*First*, Plaintiff alleges that during team meetings NYPH's CIO discussed how employees, including Plaintiff, had requested religious exemptions and further "expressed his personal opinion" that such requests would not be granted and should be discouraged. Compl. ¶¶ 48–49. As a matter of law, pure statements of opinion cannot support a defamation claim. *See Mangan* v. *Corp. Synergies Group, Inc.*, 834 F. Supp. 2d 199, 205 (D.N.J. 2011) (dismissing defamation claim based on opinion statements because "such statements only reflect a state of mind and therefore generally cannot be proved true or false") (internal citations and quotation marks omitted). As alleged by Plaintiff, the CIO's statements were "his personal opinion" and thus *not* defamatory as a matter of law.[15]

---

[15] Although Plaintiff does not allege exactly when the CIO made these statements, if they were made after the DOH Mandate was issued on August 26, 2021, then they were true. As described above, the Hospital informed employees that,

*Second*, Plaintiff claims that the Hospital's Vice President of Human Resources made jokes about employees who requested religious exemptions. Compl. ¶ 50. Such allegations also are insufficient to plead a defamation claim. To qualify as a defamatory statement, the statement must be able to be proven true or false. *See Mangan*, 834 F. Supp. 2d at 205. Common sense dictates, and courts have recognized, that jokes, like opinions, are not subject to verification. *See, e.g.*, *Avenatti* v. *Fox News Network, LLC*, 2021 WL 3603035, at *2 (D. Del. Aug. 13, 2021) ("When a statement is clearly a mere joke there is no defamation.") (alterations omitted).

*Third*, Plaintiff alleges that, after he was deemed to have resigned, NYPH's CIO defamed him by announcing his resignation at a Town Hall. Compl. ¶¶ 51–54, 81–89. Plaintiff claims this statement was false because "in fact he was terminated as a result of his religion." *Id.* ¶ 82. But, as described above, NYPH deemed Plaintiff to have resigned due to his failure to comply with the DOH Mandate, not because of his religious beliefs. Compl. ¶¶ 32–33; *supra* pp. 9–10. Thus, the CIO's statement that Plaintiff had resigned was true. The truth of a statement is a complete defense to a defamation action. *Read*, 397 F. Supp. 3d at 651. Therefore, the truth of the CIO's statement bars Plaintiff's defamation claim.

---

pursuant to the DOH Mandate, it could not grant religious exemption requests. *See supra* p. 9; Ex. A.

## V.    Plaintiff Fails to State a Declaratory Judgment Act Claim

The Complaint also fails to state a claim under the DJA.  It is well established that the DJA "is a procedural vehicle that creates a form of relief; it does not create a cause of action courts may be compelled to enforce."  *In re AZEK Bldg. Prods., Inc. Litig.*, 82 F. Supp. 3d 608, 624–25 (D.N.J. 2015); *see Mutasa* v. *U.S. Citizenship & Immigr. Serv.*, 531 F. Supp. 3d 888, 893 n.4 (D.N.J. 2021) ("[T]he DJA does not create a separate cause of action, just 'a remedy for controversies otherwise properly within the court's subject-matter jurisdiction.'" (citing *Auto-Owners Ins. Co.* v. *Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016))).  Accordingly, Plaintiff's DJA claim should be dismissed.

## CONCLUSION

For the reasons set forth above, the Hospital's motion to dismiss should be granted.  Further, because Plaintiff's claims are barred as a matter of law, Plaintiff's claims should be dismissed with prejudice, without leave to replead.  *See A.G.* v. *Chester Upland School Dist.*, 655 F. App'x 125, 128–29 (3d Cir. 2016) (affirming district court's dismissal with prejudice where "[p]laintiff's claims fail as a matter of law"); *Bright* v. *LabCorp*, 2013 WL 1163489, at *2 (D.N.J. Mar. 19, 2013) (dismissing Title VII claims where plaintiff "cannot state a claim against him as a matter of law").

Dated: February 27, 2023
      New York, New York

Respectfully submitted,


PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP


By:  */s/ Alison R. Benedon*

Alison R. Benedon
Liza M. Velazquez (*pro hac vice*)
1285 Avenue of the Americas
New York, NY  10019-6064
Phone: (212) 373-3000
lvelazquez@paulweiss.com
abenedon@paulweiss.com

*Attorneys for Defendant The New York*
*Presbyterian Hospital s/h/a New York*
*Presbyterian Hospital*